Administrator, Mr. Fischer for the appellant, Mr. Peterson for the appellee. May it please the court if I could just, two things, preliminary matters. First, if I could just, with the court's permission, wish a quick congratulations to Judge Katsas on his appointment to this court. Thank you. And also if I could reserve two minutes of rebuttal time, that would be fine. Very well. Thank you, sir. And now if I could get right to the case and explain where I think the lower court erred in its decision. And in the limited time that we have, while I concede none of the claims, I do want to focus my attention this morning on the retaliation claim. And I think that the first error that the judge made was with respect to the time period of the gap. And this is important. And I believe it is on the latter part of the opinion that the court has. I can find it for you in the joint appendix. But in principle as I do that, the judge focuses, he calls it a seven-month gap, and actually it was only a six-month gap. And you may recall. This turns on whether you measure the beginning point from when he filed the complaint or from when his supervisors were dragged into the proceeding in depositions before the agency. That's correct, Your Honor. Suppose we give that point to you. Yes. You're still talking about a six-month gap. That's correct. You have an agency explanation that is perfectly neutral, that this is part of a broader reorganization. You have no direct or suggestive evidence that one often sees in these cases, comments from supervisors or coworkers or whatever. And to me, most difficult for your side of the case, you have the fact that long after, I'm sorry, is it Dryack? Drylack. Drylack. Long after Mr. Drylack has even retired. I'm sorry, Your Honor. It's actually Drelack. Drelack. He's at the court today. Sorry. That's okay. Long after Mr. Drelack has retired, all of the remaining supervisors are reassigned consistent with the agency explanation that there's just a broader reorganization going on here. Well, Your Honor, those are all fair points, and I'd like to address them one at a time. Sure. Okay. So I think the second error that the judge made, lower court judge made, in his opinion, is that he did not consider the question that Mr. Drelack had raised, both at the lower court and in this court, the change in the reason, meaning while there was no comments, as Your Honor is quite correct, there was no comments, age-related comments or anything like that. If you look on page 244 of the appendix, so there it says that the CID was under, they had to do this because they had the loss of the other special agents in that sector over there. So that reason was challenged. That reason was undermined, and it's undermined based on two things. One is on page 278 of the record where the... Sorry, just help me with the acronym. The CID is the entity to which these people are being transferred. Yes. Okay. Out of.  They're going from FRP to CID. To CID. That's right. Okay. And that was, and my client's contention here is that the loss of the four people was something... Was in retaliation. Was in retaliation, and it would reasonably dissuade someone from filing, and the judge basically agrees with that or says that's a, that particular point of the case... We'll give you that version. We'll give you that version. We'll talk about causation. Absolutely. Okay. So I think that what happens next is that on page 278 of the record, of the joint appendix, there is an issue here as to the four people are going to be handling the casework. The casework means the prosecution of the environmental crimes, okay, which means they're already doing the work that supposedly they needed them to transfer to, okay, plus one of the agents, a Ms. Blatt, Andrea Blatt, so she testifies that... I'm sorry. You're on 278? Yeah. I was on 278 of the joint appendix, and that is... I'm just not seeing it. Sure. Take your time. I'm not seeing it. Sure. Where are you on the page? Okay. So you see the second paragraph? Evidence collection? Yes. Yeah. Evidence collection support. The primary purpose of the NSERT is to provide field evidence collection support for the investigation and prosecution and radiological crimes. Your point, as I understand it from the briefs... Yes. Your point is that CID and FOP were doing substantially similar things. Yes. And you have the sound bite of they're transferring supervisors. That's right, Your Honor. They're only transferring supervisors. And it was... But that is exactly what one would expect if the agency's proffered rationale were the real one, which is it's a big government. Lots of different components or agencies do similar things, and high-level supervisors often decide to shift personnel from one office to the other. Right. You wouldn't enlist the public affairs office to take over the criminal enforcement. You'd enlist an office that's doing similar things. But, Your Honor, that's not in a vacuum, though. Meaning what happened here was there was a change of reason. Meaning they didn't say that wasn't the reason. Meaning that was the second reason. And you have this Ms. Abbott who says, and I do apologize for this, I said in my brief it was on SA-10. It's actually SA-8. And what she says... Supplemental. Okay. Supplemental. Is SA supplemental? Yes, supplemental. Okay. So if you look on SA-8 of that, what you have... In fact, I see I have three minutes left. What I'd like to do is just... We'll let you finish. Okay, sure. But I'd be willing to punt my rebuttal time to make this point. Is that she says there was a call. It involved all of the agents, all of the supervisors. They were told on the call that they were going to keep doing substantially the same duties. The only thing that would change is the supervisor. Now, I do want to add one other case. One other case, and I do find and I will file a 28-J, I believe it is. And I gave a copy of this. I offered a copy of this to the government this morning. Okay. The case is Ergo, Robinson v. Ergo. Okay. It's a district court case. I'm very familiar with the case because I was a defense lawyer on the case, believe it or not. Okay. There was a jury trial on it with Judge Bates. I won the jury trial, but I could not get summary judgment on this case. And Judge Bates writes in his memorandum of opinion, in fact, I couldn't even get directed verdict on this thing, that basically when you have a gap, okay, and he did... When you have a gap, okay, of six months, and as the Supreme Court says in the Clark case, which is very important, that the Supreme Court says that cases that accept mere temporal proximity between an employer's knowledge and of the protected activity and an adverse action must be sufficient evidence of causality, okay, to get through this. But this is not this case. This is not a case that Mr. Drelak's case is not dependent upon a temporal proximity alone. And I know that... I'm sorry. I'm still not seeing what else you have from the fact that the transferring agency and the transferee agency are doing similar things. Okay. I do not see any evidence in the record from the other side that there was, from the government, that there was any other, anything else done in this reorganization. I mean, it's a jury question, essentially, okay, so you say, after you said that we needed them and now you change your mind on that, okay. So now what you're saying essentially is they're going to do the same duties, they're going to change supervisors, and they're not going to give Mr. Drelak, he's not going to have those people replaced, okay. So then the question is, okay, and clearly that Judge Cooper found that that was a loss to Mr. Drelak. So then the question becomes, okay, so was this really a reorganization that affected all the, as you say, that it was? And there's no evidence that it was in this case. And I think all of that together... The remaining supervisors were transferred over long after Mr. Drelak was gone. Well, maybe they did that in response to his suit. I mean, maybe, I think the key is... They transferred everyone in the division in order to cover their tracks and win this case. Well, I don't know about that, but the point is, the decision at the time, okay, that's the point that he's looking at. So that's what I have. Thank you. I appreciate it. Thank you. Good morning. Good morning. I'll start with addressing the points that a colleague raised in terms of the gap, the temporal gap between the last protected activity and the alleged adverse action. In this case, we don't accept the idea that supervisors who may be signing an affidavit represents another protected activity in this case. So the initial... No, but the ultimate question is whether the adverse action on the back end was undertaken with a bad retaliatory motive. And it doesn't seem implausible to say that the triggering event for the supervisor might have been the pain in the neck of getting dragged into this proceeding and having to draft the affidavit. And most managers find litigation distracting. So that part of his case doesn't seem to me crazy. Well, these were managers that were experienced managers in this case that were directly told by the plaintiff of his EEO complaint in September of 2012. If there was a point in time to dread the dragging into litigation, that would have been another point in time where that could have happened. And that was much, much earlier than signing of the affidavits, almost a year earlier. And in that time, Mr. Dreilich had... I'm sorry. I thought there was testimony. This is Mark Barnett and Morrison. Yes, sir. And I thought there was testimony. Mark Barnett's the second-level supervisor who made the decision to reassign the four officers. That's correct. I thought there was testimony that he gave in his affidavit that he only learned about this case when he was forced to do that affidavit. Am I misremembering? I believe that was Mr. Barnett's memory. It was Mr. Dreilich who said in his affidavit to the EEO complainant that he had provided this information to his managers in September of 2012. Okay. And that was approximately a few weeks after he had filed his EEO complaint in August or made his first contact in August of 2012. Okay. So at the very least, Mr. Morrison, perhaps Mr. Barnett, knew about the complaint. And in that time, Mr. Dreilich received outstanding performance evaluations, cash bonuses, was constantly queried in terms of how the reorganization would impact his division, was invited into meetings, hardly evidence of a retaliatory cabal set to make his life miserable or to run him out of the agency. But that point, I understand that point. I'm not sure that goes so much to the question of what the time gap is so much as just to the question that there doesn't seem to be a whole lot of evidence of causation here. That is true, Your Honor. There isn't much evidence of causation. I mentioned the time of September 2012 just to point out that there was a longer gap in time between the initial knowledge of his managers and to the removal of the four agents. Okay. The other point that my colleague mentions is that the reason for the reassignment seems to be, in his opinion, inconsistent. And I believe that there's evidence in the record to demonstrate that this reorganization occurred over many years. It started in some form in 2007 and continued over time and went through many iterations and many different test case and strong proposals that were initially adopted and revised. But furthermore, I think fundamentally, getting into the rationale of the actual reorganization isn't really what we're here to discuss today. We're here to discuss whether there's sufficient evidence that that proffered explanation, from which a reasonable jury could find that that proffered explanation was pretext. Precisely, Your Honor. And the information that the plaintiff brought out today just seems to imply that the reorganization itself was somehow implicated in a retaliatory framework. We don't believe there's any evidence of that. We believe that for the reasons that we've presented here and in our brief, the Court should affirm the District Court's opinion. If there's nothing else. Thank you, Counsel. Sure. I think the question most that you asked before that, and must confess, I didn't articulate it, my answer. And after listening to the U.S. Attorney, I think Your Honor's troubled with the issue that later in the reorganization, other things happened. Years later. Other things happened that seem wholly divorced from whatever friction there is with Mr. Drelak, and that seem strong support for the proposition that there is this broader reorganization. It's been ongoing from long before he had his troubles, and it's continuing long after. And bit by bit and piece by piece, it sweeps all of FOP into CID. I think the better way of articulating that as a plaintiff's lawyer here, or appellant's lawyer, is that if Your Honor looks at the case, not just in the vacuum of that particular action, but with all of the actions, with all the things this man claims happened to him, the promotions he didn't get, and that's a whole other issue. The whole with exhaustion. The time bar claims can still set the backdrop for this. For that. The question is at that moment. I think a better way of saying it is at that moment when they took away those four people, there's a jury question as to whatever they did years later. Was that part of an intent with a pattern to get rid of this man? That's really. So when I ask you what else do you have besides the time gap, the best answer is all of the other stuff that is the subject of your discrimination. Right. Which may or may not be independently actionable. Exactly. Exactly. I think that's a much better answer. Thank you, Your Honor. Thank you.
judges: Henderson, Katsas, Randolph